UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

AARON MALONE, )
 )
    Plaintiff, )
 )
v. ) No. 2:19-CV-00074-JRG-CRW
 )
FREDDY ROARK, J. STALCUP, and )
ALETHIA LEWIS, )
 )
    Defendants. )

## **MEMORANDUM OPINION**

This is a prisoner's pro se complaint for violation of 42 U.S.C. § 1983 that is proceeding as to Plaintiff's claim that Defendants failed to protect him from a serious risk of harm from another inmate [Doc. 5 at 3, 6]. Now before the Court is Defendants' motion for summary judgment [Doc. 55], in support of which they filed a statement of material facts [Doc. 56], a memorandum [Doc. 57], and Plaintiff's deposition [Docs. 56-1]. Plaintiff did not file a timely response.[1] *See* E.D. Tenn. LR7.1(a). For the reasons set forth below, this motion for summary judgment [Doc. 55] will be **GRANTED**, and this action will be **DISMISSED**.

**I.    STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean*

---

[1] Plaintiff did file an untimely response in opposition to Defendants' motion for summary judgment [Doc. 59] and response in opposition to Defendants' statement of undisputed facts [Doc. 40]. E.D. Tenn. LR7.1(a). However, neither of these filings are sworn or cite sworn evidence, and the Court therefore cannot consider them for purposes of summary judgment. Fed. R. Civ. P. 56(c)(4); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements when ruling on a motion for summary judgment).

*v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010). However, a district court cannot grant summary judgment in favor of a movant simply because the adverse party did not respond. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court must, at a minimum, examine the motion to ensure that the movant has met its burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).

## II. UNDISPUTED FACTS

In support of their motion for summary judgment, Defendants filed Plaintiff's deposition [Docs. 56-1, 57-1], upon which they rely in their memorandum in support of their motion for summary judgment [Doc. 57 at 1–5] and statement of undisputed facts [Doc. 56[2]].

According to Plaintiff, in June 2017,[3] Defendant Roark moved Courtney Bruno from one of the units Defendant Roark supervised into Plaintiff's cell [Doc. 56-1 at 22, 31]. Bruno was in maximum security/solitary confinement at some point prior to this move [*Id.* at 37–38].

Plaintiff and Bruno were cellmates from June 2017 to September 25, 2018, during which time Bruno at one point got in Plaintiff's face, pointed at Plaintiff, and said he would "kick

---

[2] Defendants also cite Plaintiff's sworn complaint to support their statement of undisputed facts [Doc. 56]. However, as the allegations therein are substantively consistent with Plaintiff's deposition testimony, the Court will rely on Plaintiff's deposition in this memorandum opinion.

[3] In his unsworn and untimely response in opposition to Defendants' statement of undisputed facts, Plaintiff now claims that Bruno moved into his cell in June 2018 [Doc. 60 at 1].

[Plaintiff's] *ss" [*Id.* at 22, 38, 42, 60]. But Plaintiff never told any Defendant about this incident, nor did he complain that Bruno posed a threat to him during this time period, because Plaintiff did not perceive Bruno as threatening him [*Id.* at 88–93]. Instead, Plaintiff complained only about his dislike of Bruno as a roommate due to his uncleanliness, because Plaintiff thought that "could possibly cause a fight" [*Id.* at 23–25, 42–44].

Specifically, Plaintiff testified that he told an unnamed officer that Bruno was "p*ssing all over the place," and that, as Muslim, Plaintiff therefore could not pray in the cell because it was not clean [*Id.* at 23]. Also, he told Defendants Stalcup and Lewis that things were "getting worse" and that he could not live with Bruno because he could not pray [*Id.* at 24–25, 28]. Plaintiff also asked Defendant Roark why he moved Bruno into his cell, told this Defendant "[y]ou don't know whether we might kill each other or not," and complained about Bruno to this Defendant [*Id.* at 31, 33–35]. While Defendants Stalcup and Lewis and another unnamed jail official told Plaintiff that Bruno would be moved, he was not [*Id.* at 23, 30, 34]

Then, on September 25, 2018, around 3 p.m., Bruno assaulted Plaintiff by scratching and gouging at his eyeballs [*Id.* at 39, 41]. While Plaintiff believes that a jail officer and Defendant Lewis saw his injuries after this attack and that inmates told an officer and Defendant Lewis that Plaintiff and Bruno were having serious issues that may lead to death after this incident, Plaintiff did not personally tell any Defendant or jail official about this attack [*Id.* at 45–47, 54, 55–57, 58–59]. Plaintiff instead attempted to hide his eye injuries from correctional officers because he feared being perceived as a snitch and chose not to pick his insulin up from the medical department that day to avoid officers seeing his eye injuries due to that fear [*Id.* at 45–49]. However, the next time that Plaintiff saw Bruno around 9 p.m. on the same day Bruno injured his eyes, Bruno threw hot water on Plaintiff, which caused him significant injuries and hospitalization [*Id.* at 50–52].

3

## III. ANALYSIS

The Court must now determine whether any genuine issue of material fact remains as to Plaintiff's claim that Defendants failed to protect him from a serious risk of harm from Bruno. Prison officials have a duty to protect inmates from violence and take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). However, an officer may be liable for failing to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety." *Id*. at 834. The requirement of "deliberate indifference" means that the prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards the risk. *Id*. at 837 (quotation marks omitted). Therefore, for liability to attach to a prison official's failure to protect, the substantial risk and need for protection must be obvious. *See, e.g., Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Defendants have met their burden to establish that they were not deliberately indifferent to a substantial risk of serious harm to Plaintiff. Specifically, while Plaintiff's testimony establishes that he made Defendants aware that he was unhappy with Bruno as a cellmate due to his uncleanliness, nothing in the record suggests that any Defendant was aware that Bruno posed a substantial risk of harm to Plaintiff prior to September 25, 2018, and the record establishes that Plaintiff himself did not believe that this was the case. While Plaintiff testified that Bruno had been housed in solitary confinement prior to becoming Plaintiff's cellmate, Plaintiff also stated that Defendant Roark moved Bruno to his cell from one of Defendant Roark's units, and nothing in the record establishes why Bruno had been in solitary confinement, or that any Defendant knew that Bruno was previously housed in solitary confinement.

4

Additionally, while Plaintiff testified that other inmates told Defendant Lewis that he and Bruno were having issues that may lead to death after Bruno's initial attack on Plaintiff on September 25, Plaintiff never filed any sworn proof to support this testimony, and his testimony about the inmates telling Defendant Lewis this information is hearsay, which the Court must disregard at the summary judgment stage. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." (internal quotation marks omitted)).

Moreover, Plaintiff has not come forward with any evidence to support his claims in response to Defendants' motion for summary judgment. The Supreme Court has found that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Accordingly, Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 55] will be **GRANTED** and this action will be **DISMISSED with prejudice**. Further, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and that Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on any subsequent appeal.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE